UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:13-cr-99-Orl-37KRS

JAMES FIDEL SOTOLONGO
STEPHANIE MUSSELWHITE
RAMARA GARRETT


**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION TO SUPPRESS FRUITS OF GOVERNMENT REVIEW OF
ATTORNEY-CLIENT/WORK-PRODUCT MATERIAL
(DATED AUG. 7, 2012) PERTAINING TO WAVERLY MEDIA AND ITS
EMPLOYEE JIM BROWN OBTAINED IN RELATION TO A DEBRIEFING OF
BROWN AND ATTRIBUTED TO MUSSELWHITE'S CONVERSATIONS WITH
HER COUNSEL AND MOTION TO DISMISS BASED ON REVIEW OF
ATTORNEY-CLIENT PROTECTED MATERIAL (DOC. 127)**

The United States of America, by A. Lee Bentley, III, United States

Attorney for the Middle District of Florida, by and through the undersigned

Assistant United States Attorney, requests that this Court deny the Motion to

Suppress and Motion to Dismiss, and, in support states as follows:

1.      In October 2012, James Brown, accompanied by his attorney who

represented him on a state matter, met with FBI agents and the Assistant United

States Attorney handling the investigation of Stephanie Musselwhite and others

in relation to the instant case. Brown was not a cooperating source for the United

States.  Brown's attorney had offered to make Brown available to the United

States for an interview to use the interview to mitigate any sentence received in

the state matter.

1

2.      During the interview, Brown provided the United States with a document he had received in August 2012 from Musselwhite.  The document contained privileged information.

3.      The agents at the interview were prevented from viewing the document and a taint team was used to determine whether the information was privileged or if the privilege had been waived.

4.      The document was then provided in the initial discovery disclosure to the defendants in May 2013.

5.      The undersigned, in attempting to respond to the motion to suppress and motion to dismiss, told Musselwhite's counsel that she did not know which document counsel referred to in his motion because she was not the original AUSA on the case.  Musselwhite's counsel referred the undersigned the Bates-stamped document number. The undersigned reviewed the document.

6.      Musselwhite now moves to suppress the document and dismiss the Indictment due to the United States receipt of the document in question.

<u>MEMORANDUM</u>

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice."  <u>In re Grand Jury Proceedings 88–9</u>, 899 F.2d 1039, 1042 (11th Cir. 1990) (internal quotation marks omitted).  The privilege protects communications between the attorney and client applies where: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made

(a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  In re Federal Grand Jury Proceedings 89–10, 938 F.2d 1578, 1581 (11th Cir. 1991) (internal quotation marks omitted).

The party claiming the attorney-client privilege "has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential."  Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) (internal quotation marks and citations omitted).  Therefore, non-confidential communications are not protected by the privilege.  "To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was '(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential.'"  Id. (quoting United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985)).

The work-product privilege applies to more information that the attorney-client privilege.  The work-product privilege "protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by agents for the attorney."  In re Grand Jury Proceedings, 601 F.2d at 171; see

also In re Grand Jury Subpoena, 220 F.3d 406, 409 (5th Cir. 2000) (work-product privilege is not automatically waived by the disclosure to a third party.).  The Eleventh Circuit has stated that "'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" Cox v. Adm 'r U.S. Steel & Carnegie, 17 F.3d 1386, 1421 (11th Cir.) (quoting Hickman v. Taylor, 329 U.S. 495, 510–11 (1947)), modified on other grounds, 30 F.3d 1347 (11th Cir. 1994).  Like the attorney-client privilege, the party asserting the work-product privilege has the initial burden of proof.  In re Grand Jury Subpoena, 510 F.3d 180, 183 (2d Cir. 2007); United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006).  Once that showing is made, the burden shifts, and "Rule 26(b)(3) ... places a twofold burden on the party seeking discovery.  The [party] must show both substantial need and undue hardship." Castle v. Sangamo Weston, Inc., 744 F.2d 1464, 1467 (11th Cir. 1984).

     The attorney-client privilege can be waived.  At the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege. United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987) (citing United States v. Gordon-Nikkar, 518 F.2d 972, 975 (5th Cir. 1975)).  As a result, once the attorney-client privilege is waived, it cannot be reasserted.  Id. (citing United States v. Blackburn, 446 F.2d 1089, 1091 (5th Cir. 1971)).

     In this case, Musselwhite voluntarily shared the information contained in the document when she faxed it to Brown.  Any third party could have obtained

the document.  However, it was Brown who received the document from Musselwhite.  There was no reason for Brown to have been privy to the information contained in the document.  Brown was not a target of the mortgage fraud investigation.[1]  Further, Waverly Media, which Brown co-owned, was not a target of the mortgage fraud investigation either.  There was no reason for Musselwhite to have sent the information to Brown, even as a co-owner.  Therefore, the document in question ceased being a confidential communication protected by the attorney-client privilege when Musselwhite voluntarily and intentionally faxed the document to Brown, an uninvolved third-party.

Moreover, the document in question was not seized, asked for, or known of by the United States.  It only came to light after Musselwhite disclosed it to Brown who gave the document to the United States.  Had Musselwhite kept the document confidential instead of sharing it with Brown, the United States most likely would not have received the document or known of its contents.

Musselwhite claims that she shared the information with Brown in his capacity as the co-owner of Waverly Media.  However, Musselwhite has not submitted any evidence that the legal advice was related to Waverly Media or that Waverly Media had sought legal advice.  As previously stated, Waverly Media was not a target in the mortgage fraud investigation and no federal criminal charges have been brought against Waverly Media.  It is true that the

---

[1] By this time in the investigation, all of the individuals who were eventually indicted had received target letters from the United States advising them of their status as targets in a federal investigation.

search warrant was executed at the business location for Waverly Media. However, as detailed in the search warrant affidavit, the agent had reason to believe that evidence of mortgage fraud would be located at Waverly Media because evidence from Waverly Property (a real estate company owned by then-target Ramara Garrett) had been seen at Waverly Media's business location.

Musselwhite has submitted no evidence that Waverly Media was a client receiving legal advice when she sent the document to Brown. Musselwhite alleges that because she owned part of Waverly Media, legal advice given to her in relation to her criminal activities flowed over to business entities she owned. That is not what is contemplated by the law. An attorney-client relationship between Waverly Media and Musselwhite's attorney was not created by the mere fact that Musselwhite was seeking legal advice in her individual capacity.

Despite her voluntary disclosure of the document detailing her discussion with her attorney, Musselwhite requests that the Court suppress the fruits of the evidence and dismiss the Indictment. Suppression of evidence and dismissal of the Indictment are not warranted. The United States did not engage in unlawful conduct to obtain the document to warrant suppression or dismissal of the indictment. Even assuming the Court thinks suppression is appropriate in this case, there was no additional evidence gained as a result of the United States receiving the document and, therefore, nothing to suppress. The agents investigating the case did not know of the information in the document and were not able to gather evidence to refute or support the information in the document.

The information the agents used to get the search warrant and further their investigation did not come from the Musselwhite document.

Further, dismissal of the Indictment is not appropriate.  "Where there is an intrusion on the attorney-client relationship the remedy for such a violation is not dismissal but the suppression of any evidence so obtained." United States v. Sander, 615 F.2d 215, 219 (5th Cir. 1980) (citing United States v. Kilrain, 566 F.2d 979, 982 (5th Cir. 1978)).  In Sander, police officers examined an attorney's confidential files on defendant's case following the attorney's murder.  No injury or prejudice resulted because nothing in the file was used by the prosecution.  Therefore, the court in Sander held that the appropriate remedy for such an intrusion is to suppress any evidence unlawfully obtained, rather than dismiss the case.  Sander, 615 F.2d at 219.  The same ruling regarding dismissal should apply in this case.

Based on the foregoing, the United States respectfully requests that Musselwhite's motion to suppress and motion to dismiss be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By:     s/ Tanya Davis Wilson
        Tanya Davis Wilson
        Assistant United States Attorney
        Florida Bar No. 0093572
        400 W. Washington Street, Suite 3100
        Orlando, Florida  32801
        Telephone:   (407) 648-7500
        Facsimile:    (407) 648-7643
        E-mail:        tanya.wilson2@usdoj.gov

</div>

**U.S. v. SOTOLONGO ET AL.**          **CASE NO. 6:13-CR-99-ORL-37KRS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2014, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following:

> John Bergendahl, Esq. (Counsel for Sotolongo)
> Richard Klugh, Esq. (Counsel for Musselwhite)
> A. Brian Phillips, Esq. (Counsel for Garrett)

> *s/ Tanya Davis Wilson*
> Tanya Davis Wilson
> Assistant United States Attorney
> Florida Bar No.: 0093572
> 400 W. Washington Street, Suite 3100
> Orlando, Florida  32801
> Telephone:   (407) 648-7500
> Facsimile:   (407) 648-7643
> E-mail:       tanya.wilson2@usdoj.gov