UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. Case No. 6:13-cr-99-Orl-37KRS

JAMES FIDEL SOTOLONGO
STEPHANIE MUSSELWHITE
RAMARA GARRETT

**UNITED STATES' RESPONSE TO MOTION FOR INDIVIDUALIZED VOIR DIRE, JURY QUESTIONNAIRE, OR ALTERNATIVELY, CHANGE OF VENUE (DOC. 128)**

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, by and through the undersigned Assistant United States Attorney, responds to Defendant Stephanie Musselwhite's Motion for Individualized Voir Dire, Jury Questionnaire, or Alternatively, Change of Venue, and states as follows:

1. In the motion for individualized voir dire, jury questionnaire, or alternatively, change of venue, Stephanie Musselwhite alleges the pre-trial publicity from the Daytona Beach News Journal requires individualized voir dire to "derive[] the information necessary to weed out" the inflammatory coverage. Doc. 128 at 1-2.

2. For the reasons below, the United States has no position on the request for individualized voir dire and jury questionnaire. However, the United States opposes the alternative request for a change of venue.

MEMORANDUM

I. Individualized Voir Dire

The right to trial by jury guarantees that a criminal defendant will receive a fair trial by an impartial jury. Irvin v. Dowd, 366 U.S. 717, 720 (1961). The purpose of voir

dire is to determine whether prospective jurors can render an impartial verdict based solely on the evidence and the court's instructions. Rosales–Lopez v. United States, 451 U.S. 182, 188 (1981). Therefore, voir dire is critical in assuring the criminal defendants that their "Sixth Amendment right to an impartial jury will be honored." Id.; see also Mu'Min v. Virginia, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). Although the Constitution requires an impartial jury, it "does not dictate a catechism for voir dire." Morgan v. Illinois, 504 U.S. 719, 729 (1992). Individual, sequestered voir dire may be a preferable manner in which to examine and test for potential biases of prospective jurors; however, the Supreme Court has never held that such a procedure is constitutionally required. See Mu'Min, 500 U.S. at 425; Patton v. Yount, 467 U.S. 1025, 1034 n. 10 (1984); see also Cummings v. Dugger, 862 F.2d 1504, 1508-09 (11th Cir. 1989).

In this case, the Court issued a pre-trial order stating that "[n]o later than March 10, 2014 the parties shall file a single set of jointly proposed questions for the Court to ask the venire during voir dire." Presumably, the Court will allow the parties to ask specific questions about the case. Musselwhite can ask questions about pre-trial publicity to determine its affect, if any, on the venire. Moreover, the Court has already seemed to make provisions for questioning the venire about potential pre-trial publicity issues. In the jury questionnaire listed on the Court's Middle District of Florida webpage, some of the questions the Court asks the venire are: "What newspaper and/or magazines do you read regularly? Also, do you have any favorite T.V. shows

and/or websites?" These questions would allow Musselwhite to follow up and determine to what extent, if any, the media coverage has had on their view of the case.

As this Court will be in the best position to decide the methodology to be used in selecting a fair and impartial jury in this case, the United States does not object to the Court directing specific questions used to determine whether any pre-trial publicity has caused a prejudicial effect on the venire. The trial court has broad discretion in determining the scope and manner of voir dire[1], including which questions will be asked and whether individual questioning will be permitted. Mu'Min, 500 U.S. at 427; Ham v. South Carolina, 409 U.S. 524, 528 (1973); Aldridge v. United States, 283 U.S. 308, 310 (1931); Cummings, 862 F.2d at 1507. However, the United States opposes a request for a change of venue.

II. Change of Venue

Motions to change venue are governed by Fed. R. Crim. P. 21. Rule 21(a) provides for changes of venue because of prejudice to the defendant in the district where the Indictment was returned. Essentially, pursuant to Rule 21(a), a defendant may claim that the prejudice that exists against the defendant is so great that the defendant cannot get a fair and impartial trial in the district where the case is pending. Musselwhite has not shown that the prejudice against her that a venue change is justified.

In her motion, Musselwhite asserts that the pre-trial publicity generated by the Daytona Beach News Journal has reached a level of saturation in Volusia County as to be inflammatory and pervasive. Doc. 128. In support of her motion, Musselwhite relies

---

[1] The United States submits that sequestered questioning is not necessary to accomplish voir dire

on United States v. Campa, 459 F.3d 1121 (11th Cir. 2006). However, Campa does not offer Musselwhite the relief she seeks.

In Campa, five defendants were indicted for acting and conspiring to act as agents of Cuba without prior notification to the Attorney General and of defrauding the United States concerning its governmental functions. Id. at 1126. The Campa defendants moved for a change of venue and expressed two major concerns: (1) community prejudice in Miami-Dade of Cuban-government association and (2) pre-trial publicity from newspaper articles about the case. Id. at 1129-32.

In support of their motion for a change of venue, the defendants enlisted the assistance of Professor Gary Patrick Moran. Professor Moran conducted a survey of residents in the Miami-Dade area to determine if it was a “fair venue for the trial.” Id. at 1127. According to the survey, the majority of those polled stated that they would be prejudiced and/or find it difficult to be impartial. Id. at 1129. Based on the results, Professor Moran concluded that a venue change was the only way the Campa defendants would get a fair and impartial trial. Id.

Despite the survey and Professor Moran’s opinion regarding prejudice and the impact of pre-trial publicity, the district court denied the request for a venue change and the matter was set for trial. Keeping in mind the defendants’ unsuccessful attempt to change venue, the district court developed “an exhaustive list of questions for a two-phase voir dire.” Id. at 1132. Phase one consisted of general questions to determine the jurors’ qualifications to serve; and phase two entailed individualized “community impact” questions and “pretrial publicity questions.” Id. at 1133. Voir dire lasted seven days. Id. at 1136. The defendants were convicted as charged and appealed.

On appeal, the Eleventh Circuit sitting en banc determined that the defendants had not been denied a fair and impartial trial. Id. at 1142. The circuit court ruled that the defendants had failed to present sufficient evidence to support their claim that they had been denied "a fair trial by an impartial jury." Id. at 1143-44. Further, the circuit court agreed with the manner in which the district court conducted voir dire which had been accomplished using "meticulous. . .detailed and neutral questions that the [district] court crafted with the parties' assistance." Id. at 1147. Using that methodology, the district court had taken "extraordinary measures to carefully select a fair and impartial jury." Id. at 1148.

Additionally, the Court upheld the denial of the change of venue citing United States Supreme Court case Murphy v. Florida, 421 U.S. 794 (1976), "a case in which the Court ruled that the defendant was not denied due process when he was denied a change of venue, despite extensive publicity about the defendant's crime and criminal history. The Court found that there was no inflamed community atmosphere because the news articles appeared seven to twenty months before the jury was selected and the articles were largely factual in nature. The Court also distinguished between jurors' "mere familiarity [with the defendant and his past crimes] and an actual predisposition against him." Id. at 1144. Applying Murphy in Campa, the Court found that "the news materials submitted by the defendants fall far short of the volume, saturation, and invidiousness of news coverage sufficient to presume prejudice;" that the articles were "too old" and "too factual" to be inflammatory or prejudicial. See Campa, 459 F.3d at 1145.

In this case, Musselwhite has presented considerably less evidence, if any at all, to support her request for a venue change. Unlike the Campa defendants, Musselwhite's request is not supported by a survey to assess community prejudice due to media coverage. Instead, Musselwhite makes bare bones allegations that the media coverage was "inflammatory" and "adverse." It is the only evidence she cites in support of her motion.

Musselwhite does not present a study for the Court to review. Musselwhite's conclusory statement regarding media saturation is the only evidence she cites in support of her motion. She does not cite to a study or even the articles printed by the Daytona Beach News Journal. The United States reviewed the articles printed by the newspaper and determined that the information in the articles is limited to what is already publically available in the criminal complaint or from open court. The articles detail what the charges are, which parties are involved, dates of arrest and other factual distinctions that have no invidiousness indicating an ongoing cycle of prejudice toward any of the defendants involved in this case.

Further, in Campa, the overriding concern was of anti-Cuban sentiment in Miami-Dade, which, according to the defendants, was of utmost concern considering the that the indictment alleged that the defendants were unlawfully assisting the Cuban government. Campa, 459 F.3d at 1142-47. Yet despite this concern, the Eleventh Circuit upheld the district court's ruling denying the motion for change of venue. Id. The same denial should occur in this case.

Musselwhite's case does not present the same level of concern as the one presented in Campa. Musselwhite is charged with a conspiracy to commit financial

crimes. She has not shown that there is an "anti-financial crime" element in the venue from which the jurors would be drawn or that the individuals in the trial venue have some particular anti-financial crime sentiment that has been inflamed based on the media's coverage of her case. The case before this Court does not reach the rare applicability or extreme situation necessary to justify a change of venue. Mere knowledge of a case from news articles does not translate into prejudicial effect on the community. Additionally, Musselwhite does not set forth any greater evidence than the Campa case in providing evidence showing some prejudice toward her and has not produced any article in which goes beyond mere knowledge of the facts or casts a partial light toward her guilt or innocence. Musselwhite has not met the "extremely heavy burden in justifying a change of venue and her motion should be denied.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

By: *s/ Tanya Davis Wilson*
Tanya Davis Wilson
Assistant United States Attorney
Florida Bar No. 093572
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: tanya.wilson2@usdoj.gov

**U.S. v. SOTOLONGO, ET AL.** **CASE NO. 6:13-CR-99-ORL-37KRS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John Bergendahl, Esq. (Counsel for Sotolongo)
Richard Klugh, Esq. (Counsel for Musselwhite)
A. Brian Phillips, Esq. (Counsel for Garrett)

*s/ Tanya Davis Wilson*
Tanya Davis Wilson
Assistant United States Attorney
Florida Bar No.: 093572
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: tanya.wilson2@usdoj.gov