IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES FIDEL SOTOLONGO, et al.,<br><br>Defendants. | No. 6:13-cr-99-JAJ- KRS<br><br>**ORDER** |

This matter comes before the court pursuant to defendants James Sotolongo and Stephanie Musselwhite's April 28, 2017 Joint Motion for a New Trial. [Dkt. No. 402]. Plaintiff, United States of America ("Government"), responded in opposition on May 12, 2017. [Dkt. No. 403]. For the following reasons, Defendants' Motion for a New Trial is **DENIED**.

The defendants bring a motion for a new trial based on alleged newly discovered evidence. Specifically, it relates to two witnesses who testified in the government's case at trial. The defendants contend that witness Christopher Mencis also testified for the government in a subsequent unrelated prosecution in Oklahoma and received a motion to reduce his sentence in this case because of that substantial assistance. The defendants do not allege that the prosecutors in this case were aware of his potential testimony at the time he testified here. Second, while there was some confusion at trial as to whether witness Abdul Rifai would also be charged for his involvement in the instant conspiracy, he has never been charged. The defendants contend that the fact that he was not prosecuted is newly discovered evidence.

### The Charges

On April 24, 2013, the grand jury for the Middle District of Florida returned a fourteen count indictment charging defendants Sotolongo, Musselwhite, Christopher Mencis and Ramara Garrett with numerous offenses related to a mortgage-fraud scheme. Count one charged all four defendants with having conspired, in violation of 18 U.S.C. § 371, to make false statements to FDIC-insured financial institutions in violation of 18 U.S.C. § 1014, and to commit bank fraud, in violation of 18 U.S.C. § 1344. Counts two through twelve charged Sotolongo and Musselwhite

1

with crimes in furtherance of a bank-fraud scheme, in violation of 18 U.S.C. § 1344. Defendant Christopher Mencis, the only defendant charged in count thirteen, plead guilty prior to trial and testified in the Government's case in chief. Count fourteen charged Sotolongo, Musselwhite, and Garrett with having made false statements to Washington Mutual Bank, an FDIC-insured financial institution, in violation of 18 U.S.C. § 1344. Defendant Sotolongo was found guilty of counts 1 through 12 and acquitted on count 14. Defendant Musselwhite was found guilty on counts 1, 4-12, and 14. She was acquitted on counts 2 and 3. Ramara Garrett was acquitted on counts 1 and 14, the only counts alleged against her.

## I. Background

From 2002 to 2007 the real-estate market was very hot, with quickly escalating property values and irrationally exuberant investors. During this time Sotolongo, a car salesman and finance director, recruited individuals to invest in expensive residential properties with him, including his father-in-law. In early 2007, Sotolongo recruited Abdul "Jack" Rifai, the owner of the dealership, and Rifai convinced Sidney Coton, another salesman at the dealership, to join them. Sotolongo planned to buy multiple properties with his partners, rent them out, and then resell them for a profit. Christopher Mencis was the mortgage broker for all but the first of the seven properties included in the charging documents. Sotolongo and the straw borrowers obtained mortgage loans from four FDIC-insured banks to purchase the properties – Washington Mutual Bank, Wells Fargo Home Mortgage, JPMorgan Chase, and Bank of America. Among other things, these banks relied on the representations in the real-estate contract regarding the borrower's deposits to ensure that the borrower had the necessary funds to close the transaction and had a personal stake in the property. The bank relied on information that the title agent put on the HUD-1 Settlement Statement regarding the payment of the borrower's deposit and cash to close. The straw purchasers here could not qualify for mortgages without the fraudulent statements made on their behalf.

Once Sotolongo and his partners obtained loan commitments for the real-estate transactions, Defendant Musselwhite closed the loans. When a lender is involved in a transaction, the title agent prepares a HUD-1 Settlement Statement in compliance with the lender's closing instructions. A HUD-1 lists all of the fees associated with the transaction as well as the terms of that transaction, including the amount that the borrower and seller must bring to closing. Closing agents must acquire these funds no later than the time of closing. Thus, the borrower either provides cash to close by a wire transfer or by cashier's check at the closing. Musselwhite assisted

Sotolongo and facilitated the fraud by executing HUD-1s that falsely represented that the borrowers had provided their deposits and cash to close. The evidence showed that Musselwhite had disbursed large portions of the sellers' proceeds to Sotolongo or to the companies he owned and controlled – American Signature Homes (ASH) and Omni One Financial – permitting Sotolongo and his partners to use those funds to satisfy the borrower's deposit and cash-to-close obligations.

## II. Standard of Review

Federal rule of criminal procedure 33(b) authorizes a district court to grant a new trial based on new evidence only if the following five-part test is satisfied: (1) the evidence was in fact discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not merely cumulative or impeaching; (4) the evidence was material; and (5) the evidence was of such a nature that a new trial would probably produce a different result. *U.S. v. Lee*, 68 F.3d 1267, 1273 (11th Cir.); *U.S. v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005). A failure to meet any of these elements is fatal to a motion for a new trial based on newly discovered evidence. *U.S. v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995). Motions for a new trial based on newly discovered evidence are "highly disfavored" and should be granted only with "great caution." *U.S. v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting *U.S. v. Garcia,* 13 F.3d 1464, 1472 (11th Cir.1994)).

If a motion for a new trial is filed while an appeal is pending, the district court has jurisdiction to entertain the motion. *See U.S. v. Cronic*, 466 U.S. 648 (1984); *U.S. v. Khoury*, 901 F.2d 975 (11th Cir. 1990); *U.S. v. Fuentes-Lozano*, 580 F.2d 724, 726 (5th Cir. 1978)[1]. This leaves this Court two choices: deny the motion on its merits or certify its intention to grant the motion to the Eleventh Circuit Court of Appeals. *Id*. The Eleventh Circuit Court of Appeals may entertain a motion to remand the case if this Court chooses to certify its intention to grant the motion for a new trial. *Id*.

## III. Analysis

The defendants allege two grounds for a new trial based on newly discovered evidence. Defendants argue that Christopher Mensis testified for the government in the Western District of

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) the Eleventh Circuit Court of Appeals adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Oklahoma in an unrelated case and received a benefit in this case for doing so. They further argue that Abdul Rifai has not been prosecuted for his involvement with the mortgage-fraud scheme in this case and that jury was mislead at trial to believe he would be charged. Defendants argue that these alleged instances of newly discovered evidence amount to *Brady* violations and that they are entitled to an evidentiary hearing on the matter.

**A. Christopher Mencis**

Well after the conclusion of the trial of this case, on February 20, 2015, Christopher Mencis was called by the Western District of Oklahoma's United States Attorney's Office in a case captioned *U.S. v. Bartice "Luke" King, et al.*, Case No. CR-13-63-F. During Mencis' testimony, he admitted to his involvement in gambling and gambling-related activities. The defendants argue that this information was not disclosed to them prior to or during their trial. The defendants believe that without this disclosure, they were unable to conduct proper investigation to determine the nature and extent of Mencis' gambling activity and whether his involvement in the *King* case resulted in an additional actual or perceived benefit above that specified in his plea agreement in this case. The defendants content that the fact of his testimony demonstrates that he was "a likely or possible target" of the investigation. No support is provided for this theory, not even a transcript of the testimony.

The Middle District of Florida's United States Attorney's Office became aware of Mencis' involvement in the *King* case on approximately August 13, 2015. It became aware because Mencis' attorney, Charles Greene, contacted it to request a Fed. R. Crim. P. 35(b) reduction in his sentence based on Mencis' cooperation. A motion was filed and a hearing conducted on the Rule 35 motion, which was ultimately granted on May 16, 2016. [Dkt. No. 399, 400].

As stated above, the Eleventh Circuit Court of Appeals has held that newly discovered evidence must meet a five-part test in order to grant a motion for a new trial. *See Garcia*, 13 F.3d at 1472. The newly discovered evidence at issue in *Garcia* dealt with a government witness being investigated by another state on a murder charge. *Id*. The court in Garcia held that this evidence did not warrant a new trial because it was "at most" impeaching evidence and was not likely to produce a different verdict. *Id*. Similarly, the evidence of Mencis testifying in a trial relating to gambling is merely impeaching evidence and likely would not have produced a different result. *See Id*. The defense has not alleged any facts or shown any evidence that Mencis was a target of

the Western District of Oklahoma's case, and in fact, Mencis was not interviewed by that office until some two and a half months after he testified in this case.

The information regarding Mencis testifying in the Western District of Oklahoma and his gambling fails to meet requirements of the five-part test. Part three, four, and five are not met. *Id*. First, this evidence fails to make out the third requirement because it "at most would merely have impeached" Mencis. *Id*. Second, it fails to satisfy the fourth requirement, that the information be material. Defendants provide no convincing support for the contention that the information regarding Mencis' gambling was material. Third, it fails to satisfy the fifth requirement, that a new trial would probably produce a new result. Mencis was subject to vigorous cross-examination during trial and it is unlikely that this additional evidence would produce a different result.

**B. Abdul Rifai**

The defendants contend that the Government's failure to charge Rifai is newly discovered evidence. Rifai had not been charged at the time of his testimony in this trial. In fact, there was extensive cross-examination on the issue.[2] The Government argues that it was its intention and expectation at the time of trial and sentencing that Rifai would be charged.

Throughout the trial, Rifai was never granted immunity and the defense was able to cross examine him and had the opportunity to emphasize that he was testifying as an unindicted co-conspirator. In analyzing the above stated five-part test for granting a new trial based on newly discovered evidence, nothing has changed regarding Rifai's status. The jury could infer that his testimony was an attempt to curry favor with the government to avoid prosecution. Throughout trial and Rifai's testimony, he was an unindicted co-conspirator[3] and that is what he remains to this day. Simply put, this evidence would just be additional impeachment evidence, which alone would not warrant a new trial. *U.S. v. Champion*, 813 F.2d 1154, 1171 (11th Cir. 1987) ("Newly discovered impeaching evidence is insufficient to warrant a new trial."). Additionally, this new evidence is not material and as such would not produce a different result. The defendants had full opportunity to cross examine Rifai about his testimony and make arguments about his status as an unindicted co-conspirator.

---

[2] What could have been a concise answer turned into pages of transcribed testimony from Rifai going back and forth on whether or not he had indeed been charged with any crime.
[3] A stipulation to this effect was entered into during the trial.

**C. Brady Violation**

The defendants argue that the alleged newly discovered evidence are *Brady* violations. In order to be successful in arguing that a Brady violation occurred, the Eleventh Circuit Court of Appeals has established a three-prong test, in which the defendants must show: (1) the prosecution suppressed the evidence; (2) the evidence was favorable to the defense or exculpatory; and (3) that the evidence was material. *U.S. v. Knight*, 867 F.2d 1285, 1289 (11th Cir. 1989). Evidence is "material" for Brady purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Breedlove v. Moore*, 279 F.3d 952, 961–62 (11th Cir. 2002) (quoting *U.S. v. Bagley*, 473 U.S. 667, 682 (1985)). A "reasonable probability" is a probability that is sufficient enough to undermine the confidence of the trial outcome. *Id.*

In regard to Mencis, the Middle District of Florida United States Attorney's Office was not aware that he was tangentially involved with and going to testify in the Western District of Oklahoma case before or during this trial. In fact, the Government did not find out about Mencis' cooperation in Oklahoma until August of 2015, sixteen months after this trial concluded. There is no evidence that any United States Attorney for the Middle District of Florida was aware of Mencis' gambling issues or the possibility of him testifying in an unrelated case, in Oklahoma, over a year after this trial occurred. *See generally, U.S. v. Giglio* 405 U.S. 150 (1972) (holding non-deliberate deceptions or misrepresentations are incompatible with the demands of justice), *Antone v. U.S.*, 603 F.2d 566 (5th Cir. 1979) (even if knowledge of perjured testimony is held by another member of the Government's office and not the attorney trying the case, it will still be imputed for *Giglio* purposes). Because there is no evidence that this information was known to anyone in the Middle District of Florida United States Attorney's Office or anyone involved in the prosecution, this information was not and could not have been suppressed.

In regard to Rifai, there is no new nondisclosed evidence present. Rifai was an unindicted co-conspirator at the time of trial and because he ultimately was never charged, he still is an unindicted co-conspirator. It was certainly confusing at trial as to whether he would be charged and the confusion was itself impeaching. The defendants had full opportunity to cross examine him about whatever they deemed necessary and were not precluded from driving home his status as an unindicted co-conspirator. As such, any information about Rifai's status was not suppressed and ultimately would not have changed the outcome of the trial, because his status is still the same.

At most, in regard to both Mencis and Rifai, the evidence is merely cumulative impeachment evidence. The Court finds that neither of these allegations amount to *Brady* violations.

**D. Evidentiary Hearing**

The decision to hold an evidentiary hearing on the matter is within this Court's sound discretion. *U.S. v. Schlei*, 122 F.3d 944, 990 (11th Cir. 1997) (quoting *U.S. v. Slocum,* 708 F.2d 587, 600 (11th Cir.1983)). When the resolution to a motion for a new trial is clear, "the district court is not required to hold an evidentiary hearing." *U.S. v. Giraldo*, 352 Fed. Appx. 300, 302 (11th Cir. 2009) (citing *U.S. v. Jernigan,* 341 F.3d 1273, 1289 (11th Cir.2003)). The acumen gained by this Court during the course of proceedings makes the Court well qualified to rule on the motion for a new trial without the need for an evidentiary hearing. *U.S. v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997). The Eleventh Circuit Court of Appeals has previously held that if evidentiary hearings are ordered, it is "because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession[s]." *U.S. v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977); *Schlei*, 122 F.3d at 944.

This Court is particularly well-suited to rule on this motion without a hearing. This Court presided over the trial and the motions filed following its conclusion. *See U.S. v. Thompson*, 335 Fed. Appx. 876, 882 (11th Cir. 2009). This Court heard and evaluated the testimony of Mencis and Rifai, whose credibility is now being challenged. *See Hamilton*, 559 F.2d at 1373. This motion for a new trial does not involve either witness recanting or one of the "unique situations" described above. *Id.*, *see U.S. v. Culliver*, 17 F.3d 349 (11th Cir. 1994). Further, as stated above, this evidence would merely be cumulative impeachment evidence and defendants have failed to meet the additional requirement that the newly discovered evidence is material or would have changed the trial's outcome. Therefore, an evidentiary hearing is unnecessary. This Court may accept everything the defendants allege, absent the speculation and inferences that go along with it, and still come to this conclusion.

## IV. CONCLUSION

The defendants have failed to satisfy each element of the five-part test in order to be granted a new trial based on newly discovered evidence. *See Starrett*, 55 F.3d at 1554. In regard to both Mencis and Rifai, the defendants have failed to show that the new evidence is not merely

impeachment evidence, that it is in fact material, and that it is likely to have changed the outcome of the trial. The failure to meet any of the elements in the five-part test is fatal to a motion for a new trial. *Id*. The newly discovered evidence is simply evidence that could be used to impeach the defendants. Additionally, neither of these incidences amount to *Brady* violations.

Upon the foregoing,

**IT IS ORDERED** that the defendants' motion for a new trial and an evidentiary hearing is **DENIED**.

**DATED** this 26th day of June, 2017.

                                                  JOHN A. JARVEY, Chief Judge
                                                UNITED STATES DISTRICT COURT
                                                SOUTHERN DISTRICT OF IOWA
                                                SITTING BY DESIGNATION